**EMERSON ELECTRIC COMPANY,
Plaintiff/ Respondent/Cross–
Appellant,**

**v.**

**CRAWFORD & COMPANY,
Defendant/Appellant/Cross–
Respondent.**

Nos. 71596, 71633.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 9, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 9, 1998.

Application for Transfer Denied
March 24, 1998.

Holtkamp, Liese, Beckemeier & Childress, P.C., James P. Lemonds, Erich Vieth, St. Louis, for appellant.

Thompson Coburn, Dan H. Ball, Bruce D. Ryder, St. Louis, for respondent.

PUDLOWSKI, Judge

This jury-tried case arises out of an adjustment of an automobile liability claim occurring on 29 April 1989. Emerson Electric Company (Emerson) is a third party beneficiary of a Claims Service Contract between Crawford & Company (Crawford), a claim adjusting company, and Old Republic Insurance Company (Old Republic), Emerson's insurer. We affirm in part and reverse in part.

In 1988, Emerson entered into an insurance agreement with Old Republic wherein Old Republic insured Emerson for automobile liability. The policy carried a one million dollar deductible. Subsequently, Old Republic and Crawford entered into a "Claim Service Contract" providing that Crawford would investigate, adjust, settle or resist all

claims for which Emerson was insured under its contract with Old Republic. Emerson paid Crawford for services rendered pursuant to the Claim Service Contract.

Crawford adjusters stated they owed certain responsibilities and obligations to Emerson. Some of their claim adjusting duties for Emerson included: reporting regularly and accurately; investigating, adjusting, settling and resisting claims in a competent manner; selecting experienced and competent defense counsel; monitoring and supervising defense counsel; providing effective defense to allegations of fault, medical and damages; providing reasonable, professional and timely settlement recommendations; providing competent defense at trial; and disposing of any claim for a reasonable sum. Crawford's adjusters are presumed to work together with defense counsel in order to defeat or lessen any claims brought against Emerson. Additionally, the adjusters are deemed to make an independent recommendation for settlement.

### The Jenkins Accident

On 29 April 1989 in Covington, Louisiana, a car insured by Emerson rear-ended a boat trailer being pulled by a car with Mr. and Mrs. David Jenkins (Jenkins). Jenkins did not suffer immediate pain. His doctor prescribed physical therapy which Jenkins failed to attend due to financial difficulty. However, in May 1989 X-rays and an MRI revealed that the accident had caused a bulge in one of his spinal disks requiring surgery.

### Jenkins' Claim

On 11 May 1989, Emerson assigned the Jenkins' claim to Crawford. Crawford denied liability and Jenkins filed suit. Crawford selected Dicky Patterson (Patterson), a solo practitioner, to handle the defense of the Jenkins' case in June 1989. Crawford was required to approve Patterson's expenditures and to review all legal fees. Ultimately, Emerson paid all Patterson's expenses.

Patterson failed to file a timely answer and to request a jury trial. Crawford asked Patterson for an evaluation of the liability and damages in June and July 1989. Patterson did not comply with this request until December 1990. During that time, Crawford

had no information with which to evaluate the case nor did Crawford attempt to settle the claim. On 20 July 1989, Emerson received a report from Crawford estimating the value of the case at fifteen or twenty thousand dollars. In October 1990, Jenkins requested a settlement of $800,000. Emerson did not receive another report regarding the personal injury claim until 15 March 1991.

In the November 1990 pretrial conference, the trial judge suggested to the attorneys that the case was worth about $425,000. Emerson was never informed that when a Louisiana trial judge in a non-jury case recommends a settlement amount and the parties fail to settle, the resulting judgment for a plaintiff is usually higher than the judge's recommendation.

### Settlement of Jenkins

Patterson's first settlement recommendation was sent to Crawford in December 1990. Patterson conveyed the $800,000 offer by Jenkins and included his personal recommendation to settle for as much as $245,000. The letter did not mention the judge's recommendation. At trial Patterson failed to present evidence supporting his damage calculations.

One Crawford adjuster agreed with Patterson's maximum $245,000 settlement offer. Crawford incorrectly stated this would be a jury trial and failed to mention the judge's recommendation. Another Crawford adjuster stated his dissatisfaction with the handling of the case and suggested further steps which may be taken prior to trial.

Emerson did not receive a report on the Jenkins' claim for a year and a half. In that time, the evaluation of the case had gone from approximately $20,000 to $250,000. At this time, Emerson requested its legal department to look at the Jenkins' claim. However, the legal department was not qualified to prepare an evaluation of the case. Again, Emerson looked to Crawford for advice. Crawford deferred to Patterson's judgment as it did not have enough information about the case. Emerson then contacted Patterson in April 1991. Patterson recommended offering between $100,000 and $140,000 to settle the case and was given the authority to do so.

Crawford began to have doubts regarding Patterson's handling of the case. Yet, no one told Emerson about these doubts. Crawford learned of the judge's recommendation in mid-April, but according to Patterson, there were areas in the case which could be attacked.

In May 1991, Emerson was informed for the first time that the Jenkins case would be a bench trial. It was at this time Emerson also learned of the judge's settlement recommendation. Emerson expressed frustration that Crawford did not know enough about the file to give an independent recommendation.

*Jenkins trial and judgment*

On 7 May 1991, during the Jenkins trial, only Jenkins presented witnesses. At no time did Crawford or Patterson recommend a settlement offer of more than $250,000. Crawford recommended Emerson should wait and stand firm with the $250,000 offer.

The trial judge entered a judgment for the plaintiffs in the amount of $576,922.22. Additionally, the court awarded prejudgment interest accruing from the date the lawsuit was filed. The total amount of the judgment was for approximately $775,000. The case then settled for $755,000 prior to appeal.

This appeal stems from Emerson's suit against Crawford. At trial, Emerson presented evidence from a New Orleans attorney who is familiar with Louisiana practice and procedure with respect to personal injury cases. He regularly negotiated with adjusters on automobile liability personal injury damage claims. He is familiar with the evaluation standard Louisiana courts give these cases. He testified as to proper handling of such a case and specified actions that were mishandled in the disposition of the Louisiana claim. He asserted that had certain procedures been done, the amount of damages awarded may have been lowered.

Based on the negotiations and procedures which occurred at trial, he concluded that the $250,000 settlement offer was unreasonably low. A jury found in favor of Emerson. From this verdict, Crawford appeals.

■ In its first four points on appeal, Crawford contends it was prejudiced by the introduction of the attorney's testimony. The qualification of a witness as an expert lays within the discretion of the trial court. *Seabaugh v. Milde Farms, Inc.*, 816 S.W.2d 202, 208 (Mo. banc 1991). The issue in determining whether a witness is an expert is not a determination of whether there is another better qualified witness; rather, the question is whether this witness possesses a "peculiar knowledge, wisdom or skill regarding the subject of inquiry, acquired by study, investigation, observation, practice or experience." *Id.;* Section 490.065.1 RSMo (1994). An expert's opinion must aid the jurors in deciding an issue in the case since the expert's qualifications are superior to those of the ordinary juror. *Sampson v. Missouri Pacific R. Co.*, 560 S.W.2d 573, 586 (Mo. banc 1978).

■ Substantial practical experience in the area in which the witness is testifying is a permissible source of expertise. *Donjon v. Black & Decker (U.S.), Inc.*, 825 S.W.2d 31, 32 (Mo.App. E.D.1992). The extent of the witness' experience goes to the weight of the evidence and does not render the testimony incompetent. In the *Interest of C.L.M.*, 625 S.W.2d 613, 615 (Mo. banc 1981).

■ Emerson demonstrated that the attorney is familiar with the practice of personal injury settlements in Louisiana. He has handled 2500–3000 automobile accident defense claims during his career as an attorney. He regularly works with adjusters to investigate, adjust, settle and resist claims. Additionally, he is familiar with the standards, customs, and practices used by defense lawyers and adjusters in handling claims in Louisiana. It may be surmised that these qualifications deemed him to have knowledge beyond that of an ordinary Missouri juror which may aid the jury in its decision making process. Emerson laid a foundation for his testimony. It was not unduly speculative. The trial court did not abuse its discretion in allowing his testimony.

■ Crawford also believes that the attorney speculated with respect to the settlement possibility of the underlying case. It is within the sound discretion of the trial court to admit opinion testimony based on, and supported by, sufficient facts. *Seabaugh*, 816

S.W.2d at 208. The attorney's opinions were based on facts known to him at or before the hearing which others in the field would reasonably rely upon in forming an opinion and therefore, are admissible. Section 490.065.3 RSMo (1994); *see Wulfing v. Kansas City Southern Industries, Inc.,* 842 S.W.2d 133, 151–52 (Mo.App. W.D.1992). The trial court did not abuse its discretion.

■ Next, Crawford argues the trial court erred in overruling its motion for directed verdict. Crawford contends Emerson failed to make a submissible case regarding the issues of duty, causation and damages. When the asserted error is failure to grant a directed verdict for the defendant, we review the evidence presented by plaintiff to determine whether substantial evidence exists to prove the facts essential to plaintiff's claim. *Lasky v. Union Electric Co.,* 936 S.W.2d 797, 801 (Mo. banc 1997). Therefore, we view the evidence in the light most favorable to the plaintiff. *Id.* If the facts are such that reasonable minds could differ, the issue is one for the jury and a directed verdict is improper. *Id.*

■ Emerson demonstrated it was a third party beneficiary of the Crawford contract. Both parties conceded there were duties owed to Emerson in the adjustment of the Jenkins claim. Furthermore, Emerson presented evidence which persuaded the jury that Emerson suffered damages from Crawford's handling of the Jenkins claim. Since reasonable people could differ upon the facts presented in this case, the trial court did not commit error in denying Crawford=s motion for directed verdict.

■ Crawford further alleges the attorney's comments prejudiced the jury and gave Emerson an unfair advantage in that he volunteered a comment which the trial court had prohibited Emerson from introducing. "When a witness unexpectedly volunteers an inadmissible statement, the action called for rests largely within the discretion of the trial court which must evaluate the situation and determine if some remedy short of mistrial will cure the error...." *Hedrick v. Kelley,* 734 S.W.2d 529, 531 (Mo.App. E.D.1987). Our review of the trial court's denial to grant Crawford's motion for a mistrial is limited to determining if the trial court abused its discretion. *Id.* Granting a mistrial is a drastic remedy and it should only be granted when the error is so prejudicial there is no other way to cure the defect. *Id.*

■ The trial court overruled Crawford's motion for a mistrial. However, the trial court struck the response to which Crawford objected and then instructed the jury to disregard a portion of the attorney's response. It is assumed the jury obeyed the trial court's instruction in the absence of exceptional circumstances. *Barlow v. Thornhill,* 537 S.W.2d 412, 422 (Mo. banc 1976). There is no apparent prejudicial effect resulting from the trial court's direction. The point is denied.

■ Finally, Crawford alleges error in overruling its objection to a statement in Emerson's closing argument referring to the attorney's testimony. It is within the discretion of the trial court to determine the prejudicial effect of closing argument. *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc./Special Products, Inc.,* 700 S.W.2d 426, 434 (Mo. banc 1985). The trial court has wide discretion to control the closing argument of counsel. *Morrissey v. Morrissey,* 935 S.W.2d 715, 718 (Mo.App. E.D.1996). Without a clear abuse of discretion, we will not disturb its ruling. *Id.; Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 870 (Mo. banc 1993). Crawford has the burden to persuade us of error, however, we perceive no abuse of discretion.

Following the judgment of the trial court, Emerson filed a motion to amend the judgment seeking the addition of prejudgment interest entitled to it pursuant to Louisiana law. The motion was constructively denied pursuant to Supreme Court Rule 81.05(a). Emerson cross-appeals this issue. By adopting the Restatement (Second) of Conflict of Laws, the measure of damages for a breach of contract, specifically including the issue of interest, is a matter of substance rather than procedure. Section 207, comment (e) Restatement (Second) Conflicts of Law (1971). Before we can decide whether Emerson is entitled to prejudgment interest, we must

determine whether this issue is governed by Missouri law or by Louisiana law.

Missouri courts apply the "most significant relationship" test as set forth in Restatement (Second) of Conflict of Laws Section 188. *Dillard v. Shaughnessy, Fickel and Scott,* 943 S.W.2d 711, 715 (Mo.App. W.D.1997); *CIT Group/Equip. Fin., Inc., v. Integrated Fin. Serv., Inc.* 910 S.W.2d 722, 728 (Mo.App. W.D.1995). That section states:

> Section 188. Law Governing in Absence of Effective Choice by the Parties.
>
> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in Section 6.
>
> (2) In the absence of an effective choice of law by the parties (see Section 187), the contacts to be taken into account in applying the principles of Section 6 to determine the law applicable to an issue include:
>
> (a) the place of contracting,
>
> (b) the place of negotiation of the contract,
>
> [c] the place of performance,
>
> (d) the location of the subject matter of the contract, and
>
> (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws Section 188 (1971).

In the instant case, the parties did not make an effective choice of law, so we look to Section 188(2) to identify five potentially significant contacts to weigh in our determination of which state has the "most significant relationship." In evaluation of these factors, we look to the relative importance of each factor rather than merely adding the number of factors which favor each state and we are guided by the principles of Section 6.[1] "Different factors may be entitled to more weight in regard to one issue than in regard to another." *Dillard,* 943 S.W.2d at 715.

■■■ By applying the factors set out in the Restatement (Second) we find that the only contacts Missouri has with Emerson's complaint is its place of incorporation and the instant action. In contrast, Louisiana is the locus of the Jenkins accident, adjustment, trial and settlement complained of herein.[2] Therefore, we find the issue of prejudgment interest is governed by the law of the Louisiana as the state meeting the "most significant relationship" test as applied by this Court.

■■■ Crawford maintains that an award of prejudgment interest is inappropriate under Missouri law because damages were neither liquidated nor readily ascertainable. However, under Louisiana law, Emerson is entitled to prejudgment interest. *Rivnor Properties v. Herbert O'Donnell, Inc.,* 633 So.2d 735, 749 (La.App.1994) (*ex contractu* actions with demand); *Dufrene v. Duncan,* 634 So.2d 19, 22 (La.App.1994) (*ex delicto* actions). Emerson's petition included a demand for interest and, by Louisiana law, it is entitled to interest.

Accordingly, the trial court erred in its constructive denial of Emerson's motion for prejudgment interest. We remand this issue to the trial court in order to modify its judgment to award Emerson prejudgment

---

**1.** Section 6. Choice-of-law Principles...

When there is no such [statutory] directive, the factors relevant to the choice of the applicable rule of law include the needs of the interstate and international systems,

(a) the relevant policies of the forum, the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue,

(b) the protection of justified expectation, the basic policies underlying the particular field of law, certainty, predictability and uniformity of result, and

[c] ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws Section 6(2) (1971).

**2.** Crawford's place of incorporation and the place of contracting with Old Republic is Georgia.

interest consistent with this opinion. In all other respects, the judgment is affirmed.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.