Tim COONROD, Respondent,

v.

ARCHER–DANIELS–MIDLAND COMPANY, et al.,
Appellants.

No. 73639.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 10, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 19, 1999.

Application for Transfer Denied
Feb. 23, 1999.

Richard David Lageson, Eleanor A. Maynard, Suelthaus & Walsh, P.C., St. Louis, for appellants.

Robert F. Ritter, John G. Simon, Gray & Ritter, P.C., St. Louis, Mark B. Moran, Douglas B. McKechan, Waldemer, McKechan & Moran, St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Appellants, Archer–Daniels–Midland Company ("Defendant ADM") and ADM Milling Company ("Defendant Milling") (collectively referred to as "defendants"), appeal the judgment entered by the Circuit Court of the City of St. Louis, after a jury found for respondent, Tim Coonrod ("plaintiff"), on his personal injury-negligence action against defendants and awarded plaintiff $2,198,000.00 in damages. The jury found plaintiff 25% contributorily at fault and the trial court reduced plaintiff's total amount of damages accordingly. We reverse the judgment and remand for entry of "judgment notwithstanding the verdict", in favor of defendants.

The relevant facts follow. Defendant Milling is a flour milling company which owns and operates a milling plant (the "plant") located in Carthage, Missouri. It is a wholly owned subsidiary of Defendant ADM, which is a grain-processing corporation with processing plants throughout the world. Defendant ADM handles the payroll functions for Defendant Milling's employees. Defendant Milling runs the plant continuously, 24 hours a day, 7 days a week, and only shuts down if there are problems or repairs. The main building at the plant has four stories. On the fourth floor of the main building, there are eight machines known as sifters, in addition to three other sifters in other areas of the plant. These sifters are made of large wooden boxes that are approximately 5 feet high and 4 feet by 4 feet wide. The sifters are suspended by wooden rods and are similarly connected to the floor. When running, the sifters vibrate and move in a circular motion. Testimony was offered at trial demonstrating that when the sifters are operating, some movement or vibration can be felt under normal operations. Testimony was also offered indicating these sifters, which generally rotate in unison, sometimes get out of "sync", thereby increasing the normal level of vibration.

National Big 4 is a company which removes asbestos from structures and, through its sister company, EB Trucking, reinsulates those structures with fiberglass after the removal of the asbestos. Defendant Milling contracted with these two companies to remove asbestos and to reinsulate the plant. Plaintiff was an employee of EB Trucking who worked on this job at the plant. On September 30, 1989, the final day of the reinsulation project, plaintiff was working on the roof of the main building installing sheet

metal, soffit, and roofing materials. Plaintiff was positioned approximately twelve to fifteen feet high on a ladder with its base on the fourth floor roof of the main building and its top leaning against another section of the building that extended beyond the roof of the fourth floor. Plaintiff testified that while he was so situated, he heard a noise and his ladder shook and he fell onto the roof of the fourth floor, thereby resulting in bodily injuries.

After bringing his claim for workers' compensation benefits against his employer, EB Trucking, for injuries and receiving a settlement award for that claim, plaintiff brought this action in the Circuit Court of the City of St. Louis on September 19, 1994.

In relevant part, plaintiff alleged in his third amended petition:

9. On or about September 30, 1989 plaintiff, ... while a business invitee of defendants, ... was on a ladder which was placed on the roof of one of defendants' buildings. At that time, defendants by and through their agents, servants and employees, without warning, turned on the sifter and/or dust collection system which caused the ladder upon which plaintiff was working to vibrate and move. As a result, plaintiff fell from the ladder and sustained serious, permanent and progressive injuries and damages. . . . .

10. The above occurrence and injuries sustained by plaintiff were the result of the carelessness and affirmative acts of negligence of defendants, ... in one or more of the following respects:

a) Defendants negligently and carelessly turned on the sifter and/or dust collection system when defendants knew or should have known that turning on the sifter and/or dust collection system would create a hazardous and dangerous condition for plaintiff;

b) Defendants negligently and carelessly failed to warn plaintiff that they were about to turn on the sifter and/or dust collection system to allow plaintiff to come down from his ladder or discontinue his work while the sifter was in operation[.]

Defendants moved for summary judgment, contending Defendant Milling owed no duty of care to an employee of an independent contractor who was injured while working on the premises of Defendant Milling under the direction and supervision of an independent contractor, especially when said employee was covered by workers' compensation; Defendant Milling owed plaintiff no duty to warn; and, Defendant ADM could not be held liable because it was not the owner of the premises on which plaintiff was injured. The motion court denied the summary judgment motion, but granted the motion insofar as it related to plaintiff's premises liability claim against Defendant ADM. The court reasoned since Defendant ADM is not the landowner, plaintiff cannot maintain a premises liability claim against it. Plaintiff did not appeal that decision.

The case was subsequently tried to a jury. At trial, plaintiff read into evidence the deposition of his supervisor, James Handlin ("Handlin"), the only other person on the roof at the time of plaintiff's accident. At the time of plaintiff's fall, Handlin was working on the adjacent side of the building, approximately ten feet away from plaintiff. According to Handlin, only he, and no one from Defendant ADM or Defendant Milling, supervised and directed plaintiff during the entire period of the job. Through his deposition, Handlin also stated only EB Trucking, and no one from Defendant ADM or Defendant Milling, decided how it was to reinsulate the plant. Additionally, Handlin testified via his deposition only EB Trucking furnished the ladders and scaffolding for this job. Handlin similarly explained that prior to plaintiff's fall, he had twice warned plaintiff about the safety precaution of tying his ladders off to the wall at the top, on both sides and at the bottom. Handlin stated he did so because plaintiff was not abiding by the safety rules and he believed the work plaintiff was performing was capable of being performed safely by following such safety procedures.

Plaintiff also produced testimony that during his approximately three weeks on the job at the plant, he worked inside and outside of the plant, including three or four days on the

roof. On direct-examination, plaintiff testified someone, whom he believed to be an employee of Defendant ADM, said they would tell the contractors if they were going to turn the sifters on or off. Plaintiff was not able to identify any such employee except "he was working for [Defendant] ADM." Furthermore, on direct-examination, plaintiff testified that after his fall, when Handlin asked him what happened, he stated, "I told [Handlin] I didn't know because they turned the machines on or something ... ". On cross-examination, however, plaintiff testified he had "no idea" why his ladder shook and fell. Finally, Defendant Milling's plant manager, Steven Peterson ("Peterson"), testified the plant's production records from the day of plaintiff's accident listed a full day's production of flour. Peterson indicated the plant had been running continuously and had not been shut down and then started up. Peterson also testified all of the people working in the plant and operating the plant on the day of plaintiff's accident, except for the independent contractor's employees, would have been employees of Defendant Milling.

Defendants' motions for directed verdict at the close of plaintiff's case and at the close of all the evidence were denied. The jury returned a verdict in favor of plaintiff and against Defendant ADM and Defendant Milling in the amount of $2,198,000.00, the full amount plaintiff requested. The jury did, however, assess 25% of fault to plaintiff, with the trial court reducing the damages award accordingly. Defendants filed timely post-trial motions, including motions for judgment notwithstanding the verdict. The trial court overruled these motions. Defendants now appeal the trial court's judgments overruling their motions for directed verdict and for judgment notwithstanding the verdict.

Defendants raise four points on appeal. The first point on appeal contains four subpoints and the second point on appeal contains three subpoints. Because of our resolution of two of the subpoints of the first point on appeal, it is not necessary for us to address the other issues raised by Defendant

Milling or Defendant ADM on appeal. In their first point on appeal, defendants contend the trial court erred in overruling defendants' motions for directed verdict and for judgment notwithstanding the verdict because plaintiff failed to establish a submissible case of negligence against either defendant. In particular, in their second subpoint, Defendant Milling asserts it owed no duty of care to plaintiff because he was employed by an independent contractor and subject to workers' compensation laws at the time of his accident, and Defendant Milling did not control plaintiff's activities or the manner in which he did his work. In their third subpoint, Defendant ADM asserts it owed no duty of care to plaintiff because it was not the owner or operator of the premises upon which plaintiff was injured and it had no relationship with plaintiff from which any duty of care could arise. We agree with both defendants. We address Defendant Milling's claim first.[1]

■ On appeal of the denial of a directed verdict for the defendant, we review the evidence offered by the plaintiff "to determine whether substantial evidence exists to prove the facts essential to the plaintiff's claim." *Emerson Elec. Co. v. Crawford & Co.,* 963 S.W.2d 268, 272 (Mo.App. E.D.1997). "Therefore, we view the evidence in the light most favorable to the plaintiff." *Id.* If the facts could cause reasonable minds to differ, then the issue should be submitted to the jury and a directed verdict is not proper. *Id.*

■ "The standard of review of a trial court's denial of a motion for judgment notwithstanding the verdict is whether the plaintiff made a submissible case." *Brown v. Hamilton Ins. Co.,* 956 S.W.2d 417, 419 (Mo. App. E.D.1997). "To make a submissible case a plaintiff must present substantial evidence to support each element of her claim and we must view the evidence in the light most favorable to the party who obtained the verdict." *Id.* When this Court determines whether plaintiff has made a submissible

---

1. Although Defendants filed one common appellate brief and one common reply brief, their claims as to why they owe no duty of care to plaintiff are distinct from each other. Plaintiff often groups the two defendants together when referring to them. However, we will attempt to refer to each specific defendant according to their respective claims.

case, "we review the evidence in the light most favorable to the plaintiff, giving the plaintiff the benefit of all reasonable favorable inferences and disregarding defendant's evidence except insofar as it may aid the plaintiff's case." *Klugesherz v. American Honda Motor Co.*, 929 S.W.2d 811, 813 (Mo. App. E.D.1996). "However, we do not supply missing evidence or give plaintiff the benefit of unreasonable, speculative, or forced inferences." *Id.* Furthermore, evidence and inferences therefrom must substantiate each element and not leave any issue to speculation. *Id.* "To make a submissible case on [his] negligence claim, [plaintiff] had to establish the existence of a duty, a breach of that duty, and causation." *Winkler v. Robinett*, 913 S.W.2d 817, 821 (Mo.App. W.D.1995). The existence of a duty is a question of law for the court to decide. *Boyette v. Trans World Airlines, Inc.*, 954 S.W.2d 350, 354 (Mo.App. E.D.1997).

In response to Defendant Milling's claim that it owed no duty of care to plaintiff, plaintiff contends Defendant Milling did owe a duty of care to plaintiff because, although he was an employee of an independent contractor covered by workers' compensation laws, the instrumentality allegedly causing his injuries was exclusively in the possession and control of Defendant Milling.

■ An independent contractor's employee who is permitted to use an owner's facility takes the status of a business invitee. *Noble v. Bartin*, 908 S.W.2d 390, 391 (Mo. App. E.D.1995). In general, the property owner owes an invitee a duty to use reasonable and ordinary care to prevent injury to the invitee. *Id.* There is an exception to this rule, however, where the landowner gives up possession and control of the premises to an independent contractor during a construction period. *Id.* During the period of construction, the independent contractor, rather than the landowner, is deemed the possessor of the land. *Id.* Accordingly, the obligation to exercise reasonable and ordinary care to prevent injury shifts from the landowner to the independent contractor. *Id.*

■ However, "to establish that the landowner *retained* possession and control of the premises and the attendant duty of care, [the plaintiff] must show that the landowner controlled the jobsite and the activities of the contractor." *Matteuzzi v. Columbus Partnership, L.P.*, 866 S.W.2d 128, 132 (Mo.banc 1993) (emphasis in original); *see also, Callahan v. Alumax Foils, Inc.*, 973 S.W.2d 488, 490 (Mo.App.E.D.1998) (explaining " ... under the test announced in *Matteuzzi*, if the plaintiff is covered by his employer's workers' compensation insurance, he must show that the defendant was controlling both the contractor's activity and the jobsite to recover under any tort theory."). As explained in *Halmick v. SBC Corporate Services, Inc.*, 832 S.W.2d 925, 929 (Mo.App. E.D.1992), "[t]he owner's involvement in overseeing construction must be substantial in order to justify imposition of liability on the owner.... [T]he control must go beyond securing compliance with the contracts; the owner must be controlling the physical activities of the employees of the independent contractors or the details of the manner in which the work is done." It is the plaintiff's burden to prove control by the owner. *Noble*, 908 S.W.2d at 391.

■ In the case at bar, Plaintiff failed to meet that burden because he failed to prove Defendant Milling controlled his activities. As set forth above, Handlin, plaintiff's supervisor, explained only he, and no one from Defendant ADM or Defendant Milling, supervised and directed plaintiff during the entire period of the job. Additionally, Handlin also stated in his deposition, only EB Trucking, and no one from Defendant ADM or Defendant Milling, decided how to reinsulate the plant. Moreover, Handlin testified via his deposition, only EB Trucking furnished the ladders and scaffolding for this job. Handlin even gave particular examples of how he controlled the details of plaintiff's work by explaining he twice warned plaintiff to tie his ladder off as a safety precaution. Therefore, as plaintiff has failed to meet his required burden of proving Defendant Milling controlled his physical activities or the details of the manner in which his work was done, we find Defendant Milling exercised no control over the activities of plaintiff.

In response to Defendant Milling's arguments concerning the applicability of the *Matteuzzi* test, plaintiff contends Defendant Milling incorrectly relies on a line of cases that evolved out of the inherently dangerous activity doctrine. However, as stated in *Halmick*, "the inherently dangerous activity/non-inherently dangerous activity dichotomy has been abolished in cases where the employee of an independent contractor is injured and is covered by workers' compensation." *Halmick*, 832 S.W.2d at 928. We further explained in such cases, the liability of the landowner is not dependent on the nature of the activity employed in, but rather, on the degree of control a landowner maintains over the construction. *Id.* Thus, based on the foregoing, as plaintiff was an employee of an independent contractor covered by workers' compensation insurance at the time of his accident, who had actually received a workers' compensation settlement from his employer, and as neither defendant exercised any control over plaintiff's activities, we find plaintiff's argument to be without merit. Therefore, under these circumstances, Defendant Milling owed no duty of care to plaintiff.

Plaintiff further argues, in response to Defendant Milling's claim it owes no duty of care to plaintiff, that defendants undertook a duty to warn plaintiff by telling him they would warn him when the equipment in the plant was going to be turned on or off. At trial, plaintiff testified someone, whom he believed worked for Defendant ADM, said they would tell the contractors if they were going to turn the sifters on or off. However, plaintiff was not able to identify any such employee except "he was working for [Defendant] ADM." We need not determine whether this would create liability on the part of Defendant Milling because even if what plaintiff says is true, the evidence indicates there was no breach of that alleged duty.

As stated in our standards of review for the trial court's denial of directed verdict for defendant and for the trial court's denial of a motion for judgment notwithstanding the verdict, *supra*, we must view the evidence in the light most favorable to plaintiff, but plaintiff must provide substantial evidence to support his claim. *Emerson Elec. Co.*, 963 S.W.2d at 272; *Brown*, 956 S.W.2d at 419. "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide a case." *Hurlock v. Park Lane Medical Center, Inc.*, 709 S.W.2d 872, 880 (Mo.App. W.D.1985). "However, we do not supply missing evidence or give plaintiff the benefit of unreasonable, speculative, or forced inferences." *Klugesherz*, 929 S.W.2d at 813.

■ In this case, the evidence demonstrates the following: according to Handlin, who was also on the roof at the time of plaintiff's accident, working approximately ten feet away from plaintiff on the adjacent side of the building, the plant equipment was running continuously for a substantial period of time prior to plaintiff's accident and the plant equipment had not been started up at the time of plaintiff's fall. Plaintiff testified at trial that after his fall, when Handlin asked him what happened, he stated, "I told [Handlin] I didn't know because they turned the machines on or something ..." However, later on cross-examination, plaintiff testified he had "no idea" why his ladder shook and fell. Peterson, the plant manager, testified the plant's production records from the day of plaintiff's accident listed a full day's production of flour, indicating the plant had been running continuously and had not been shut down and then started up. Based on the foregoing, in order for us to find Defendant Milling breached a duty to warn plaintiff would require us to give plaintiff the benefit of unreasonable, speculative, or forced inferences. In other words, the evidence suggests there was no start up of the plant immediately prior to plaintiff's fall, there was nothing for Defendant Milling to warn him about, and thus, Defendant Milling did not breach any duty to warn plaintiff.

■ In defendants' third subpoint of their first point on appeal, Defendant ADM asserts it owed no duty of care because it was not the owner or operator of the premises upon which plaintiff was injured and it had no relationship with plaintiff from which any duty of care could arise. Plaintiff attempts to impose a duty upon Defendant ADM by asserting the plant employees were employ-

ees of Defendant ADM based on the fact Defendant ADM handles the payroll functions of its subsidiary, Defendant Milling. Plaintiff makes this assertion in spite of Peterson's testimony that all of the people working in the plant and operating the plant on the day of plaintiff's accident, except for the independent contractor's employees, would have been employees of Defendant Milling.

In support of its position, plaintiff cites no case holding that where a parent corporation handles the payroll functions for its subsidiary corporation's employees, the parent corporation is then considered the employer of those employees. Moreover, our research reveals no such case either. Furthermore, besides the fact that Defendant ADM handles the payroll functions for Defendant Milling's employees, plaintiff adduces no other evidence to support his claim the plant employees were employees of Defendant ADM. Therefore, we find Defendant ADM owed no duty of care to plaintiff.

For the foregoing reasons, we hold that Defendant ADM and Defendant Milling cannot be held liable for plaintiff's injuries. Accordingly, we reverse the judgment below and remand the case for entry of "judgment notwithstanding the verdict", in favor of Defendant ADM and Defendant Milling.

HOFF, P.J., and RHODES RUSSELL, J., concur.