Guy W. HALMICK, Plaintiff–Appellant,

v.

SBC CORPORATE SERVICES, INC., Butler Manufacturing Company, Bucon, Inc., Valspar Corporation, Hanna Steel Corporation and Enamel Products and Plating Company, Defendants–Respondents.

No. 60977.

Missouri Court of Appeals,
Eastern District,
Division One.

June 9, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
July 8, 1992.

Fred Roth, Clayton, for plaintiff-appellant.

Timothy J. Bates, St. Louis, for defendants-respondents.

GARY M. GAERTNER, Judge.

Appellant, Guy Halmick, appeals from an order of the Circuit Court of the City of St. Louis dismissing his third amended petition for failure to state a claim in this personal injury case. We affirm.

In reviewing the granting of a motion to dismiss for failure to state a claim, appellate courts accept as true all facts properly pleaded and all reasonable inferences therefrom. *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 61 (Mo. banc 1988). A petition is not to be dismissed for failure to state a claim if any set of facts is asserted which, if proved, would entitle the plaintiff to relief. *Id.*

Considering the present case under this standard, the pleadings reveal that respondent, SBC Corporate Services (SBC), owned a piece of property at the Spirit of St. Louis Airport in St. Louis County. In the early fall of 1986, SBC contracted with respondents Butler Manufacturing and Bucon, Inc. for the purpose of constructing and remodeling a hangar located on the property. Butler Manufacturing and Bucon, Inc., in turn, subcontracted with Orco Erection, Inc., to do the iron work on the project.

On March 17, 1987, appellant was employed by Orco Erection, Inc., as an apprentice iron worker. As part of his duties, appellant was required to work on steel girders approximately 45 feet above the ground. While walking along one of these

girders, appellant slipped on a "slick or slippery" surface of the girder and fell to the ground. As a result of the fall, appellant sustained serious injuries.

Appellant received workers compensation for his injuries and, on August 24, 1989, filed his first petition in the Circuit Court of the City of St. Louis alleging, *inter alia*, that SBC was liable for appellant's injuries under the inherently dangerous activity doctrine. Amended petitions were filed on September 29, 1989, and December 12, 1989. Following the Missouri Supreme Court's abandonment of the inherently dangerous activity doctrine in *Zueck v. Oppenheimer Gateway Properties, Inc.*, 809 S.W.2d 384 (Mo. banc 1991), appellant filed his third amended petition. In this petition, appellant alleged: SBC was negligent in failing "to insure that adequate precautions were taken to avoid injury ... by reason of the inherently dangerous activity"; and SBC agents oversaw the construction of the hangar and failed to insure proper safety precautions were in effect.

On September 9, 1991, SBC filed a motion to dismiss for failure to state a claim against SBC. The matter was called and argued on October 7, 1991. On that same date, the trial court granted SBC's motion to dismiss, designated the issue final for purposes of appeal and found that there was no just reason for delay. This appeal followed.

In his sole claim on appeal, appellant contends the trial court erred in dismissing his petition because the petition stated a cause of action. Appellant contends, because SBC employees observed the construction, a duty arose on the part of SBC to insure the work was performed safely. We disagree.

██ An employee of an independent contractor who has permission to use an owner's facilities takes the status of a business invitee. *Enloe v. Pittsburgh Plate Glass Co.*, 427 S.W.2d 519, 522 (Mo.1968). The general rule is that the owner of property owes an invitee an obligation to use reasonable and ordinary care to prevent injury to the invitee. *Hunt v. Jefferson*

*Arms Apartment Co.*, 679 S.W.2d 875, 879 (Mo.App., E.D.1984). An exception to this rule is created, however, where the landowner relinquishes possession and control of the premises to an independent contractor during a period of construction. *Hunt*, 679 S.W.2d at 880. During this period, the independent contractor, not the landowner, is seen as the possessor of the land. *Id.* The duty to use reasonable and ordinary care to prevent injury, thus, shifts from the landowner to the independent contractor.

This exception to the general rule does not apply in all cases, however. In *Salmon v. Kansas City*, 145 S.W. 16 (Mo.1912), the Missouri Supreme Court held that no shift of responsibility occurred where the landowner "directs the contractor to perform an act which is dangerous to others, even if carefully performed." *Salmon*, 145 S.W. at 24. *Salmon*, however, only applied this exception where an innocent third party was injured and not where the injured party was an employee of the independent contractor. *Id.* at 25.

In *Mallory v. Louisiana Pure Ice & Supply Co.*, 6 S.W.2d 617 (Mo. banc 1928), the Missouri Supreme Court extended the inherently dangerous doctrine by making a landowner vicariously liable for injuries received by employees of an independent contractor. The vicarious liability aspect of *Mallory* was temporarily abandoned in *Smith v. Inter–County Telephone Co.*, 559 S.W.2d 518 (Mo. banc 1977), in favor of a rule requiring the showing of some negligence on the part of the landowner, however, in *Ballinger v. Gascosage Electric Co-op.*, 788 S.W.2d 506 (Mo. banc 1990), the Missouri Supreme Court returned to the *Mallory* standard and eliminated the requirement of landowner negligence.

This roller coaster ride came to an end in *Zueck v. Oppenheimer Gateway Properties*, 809 S.W.2d 384 (Mo. banc 1991). In *Zueck*, the Missouri Supreme Court abandoned *Ballinger* and *Mallory* in cases where the independent contractor's employee was covered by worker's compensation, holding the application of the inherently dangerous activity exception to such employees was a distortion of sound tort poli-

cy. *Zueck,* 809 S.W.2d at 388. Judge Blackmar of the Missouri Supreme Court, in a concurring opinion, noted, however, that *Smith* may retain "some validity in a case in which the evidence supports a finding of a duty from the owner to others and a breach of that duty through the owner's own negligence." *Zueck,* 809 S.W.2d at 391 (Blackmar, J. concurring).

It is this statement in Judge Blackmar's concurring opinion upon which appellant rests his argument. Appellant's argument appears to be a unique combination of the abandoned inherently dangerous doctrine and owner/invitee liability. Basically, appellant argues SBC, by stationing employees at the construction site to observe that the work proceeded properly, incurred a duty to insure that inherently dangerous activities were made safe.

We do not find appellant's argument persuasive. In *Zueck,* the Missouri Supreme Court stated:

In expanding the [inherently dangerous activity] exception from its common law purpose of protecting innocent third parties to permitting its use by employees of the independent contractor involved in the activity itself, this Court has placed the landowner in an untenable position; the landowner is unable to define with any certainty whether an activity is inherently dangerous or not. Common sense permits a landowner to identify the potential of harm which an activity may create to persons not participating in the activity. Having identified the risks, a responsible landowner may undertake the steps necessary to protect third parties from that harm. The need to deny access to a facility, erect protective barricades around excavations, construct protective overheads where work aloft is anticipated, and a myriad of obviously needed and easily fabricated devices are relatively easy to anticipate and provide. *See* Note, *The Inherently Dangerous Doctrine in Missouri: A Socially Just Doctrine?,* 56 Mo.Law Rev. 479, 488 (1991).

When, however, the danger is one which inheres to the manner in which it is done and not work itself, the landowner must identify and protect against dangers best known and apparent to the experts he has hired to do the job. Both the special risks involved and the protections necessary to avoid the risk are often beyond the owner's expertise. Independent contractors are frequently, if not usually, hired because the landowner is aware of his own lack of expertise and seeks to have the work performed as safely and efficiently as possible by hiring those possessing the expertise he lacks.

*Zueck,* 809 S.W.2d at 387–388 (footnote omitted).

Clearly, to grant appellant his position would fly in the face of much of the purpose of the *Zueck* case. In effect, this court would be holding that *Zueck* only applies if the landowner never observed the construction—giving the landowner the choice of liability or involuntary temporary exile from his own property. This Catch 22 situation could not have been the intent of the *Zueck* opinion, nor do we believe such a rule to be reasonable.

■ Instead, we believe the inherently dangerous activity/non-inherently dangerous activity dichotomy has been abolished in cases where the employee of an independent contractor is injured and is covered by workers' compensation. Landowner liability in such cases rests, not on the nature of the activity employed in, but on the degree of control a landowner maintains over the construction.

As noted above, case law in Missouri holds that where a landowner relinquishes control of the premises to an independent contractor during the period of construction, the landowner is no longer the possessor of the land for purposes of liability. *Hunt,* 679 S.W.2d at 880. Thus, in cases such as the one at bar, the key issues are whether the landowner maintained control and, if so, whether the control was sufficient to impose liability.

■ In the present case, there is no doubt SBC maintained some control over the property. Two employees of SBC were stationed at the construction site to observe the work and insure it proceeded

properly. The propriety of the trial court's dismissal, thus depends on whether this degree of control, as a matter of law, is too minimal to permit a cause of action. We believe it is.

■ The owner's involvement in overseeing construction must be substantial in order to justify imposition of liability on the owner. *Hunt,* 679 S.W.2d at 880. The right to insure proper performance of a contract is insufficient in itself to justify the imposition of such liability. *Williamson v. Southwestern Bell Tel. Co.,* 265 S.W.2d 354, 358 (Mo.1954); *Martin v. First National Bank of Independence,* 372 S.W.2d 919 (Mo.1963). Instead, the control must go beyond securing compliance with the contracts; the owner must be controlling the physical activities of the employees of the independent contractors or the details of the manner in which the work is done. *Williamson,* 265 S.W.2d at 359; *Boulch v. John B. Gutmann Construction Co.,* 366 S.W.2d 21, 29 (Mo.App., St. L.Ct.App.1963).

Appellant has failed to allege substantial control on the part of SBC in his petition. Nor does appellant allege substantial control in his brief before this court. Instead, appellant appears to acknowledge SBC employees were present solely to insure that construction would proceed properly. As noted above, this degree of supervision is inadequate to impose liability on the landowner. The trial court, therefore, did not err in dismissing appellant's petition.

Affirmed.

REINHARD, P.J., and CRANE, J., concur.