Alvin GRIFFITH, Plaintiff–Appellant,

v.

Brother DOMINIC and Assumption Abbey, Defendants–Respondents.

No. 28617.

Missouri Court of Appeals, Southern District.

April 8, 2008.

Motion for Rehearing and Transfer Denied April 29, 2008.

Application for Transfer Denied June 24, 2008.

196

Thomas G. Morrissey, The Morrissey Law Firm, P.C., Springfield, MO, for Appellant.

Stephen H. Snead, and Cara Rose, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Springfield, MO, for Respondents.

GARY W. LYNCH, Chief Judge.

Alvin Griffith ("Griffith") appeals from an order of the trial court granting summary judgment in favor of Brother Dominic and Assumption Abbey (collectively referred to as "Defendants") on Griffith's claim of negligence against Defendants for injuries he sustained while working on a construction project at the Abbey. In its summary judgment, the trial court found Defendants were excluded from liability

based upon the independent contractor defense, as discussed in *Logan v. Sho–Me Power Elec. Coop.*, 122 S.W.3d 670 (Mo. App.2003), because Griffith, an injured employee of an independent contractor covered under workers' compensation law, could not prove that the Abbey was in control of the premises where the accident occurred. On appeal, Griffith contends the trial court erred in applying premises liability law to exclude Defendants from liability because his claim, as contended in his first point, was against Brother Dominic for general negligence in acting in an unsafe manner, and, as contended in his second point, was against the Abbey for vicarious liability under the doctrine of respondeat superior. Because we find that premises liability law does not apply to Griffith's claims, we reverse the grant of summary judgment and remand the cause for further proceedings.

### *FACTUAL AND PROCEDURAL BACKGROUND*

The following uncontroverted facts related to Defendants' motion for summary judgment were provided to the trial court by the parties. Assumption Abbey in Ava, Missouri, hired Friga Construction Company ("Friga") to renovate the roofs and remodel the "chapter room" of the Abbey. Griffith was employed by Friga as a laborer and was working on the renovation of the chapter room at the Abbey. There was a stack of several sheets of drywall leaning against a wall in the chapter room. Each sheet of drywall was about 4 feet wide, 12 feet long, and 5/8–inch thick. Griffith was using a 1– or 2–inch by 6–inch piece of wood to gradually pry the stack of drywall away from the wall against which it was leaning, in order to fit a piece of plywood behind the stack of drywall. At some point, Brother Dominic, a monk who resided at the Abbey, joined Griffith in moving the drywall. Brother Dominic and the other monks at the Abbey were not supposed to work on the construction site, and Griffith did not ask Brother Dominic to pull on the drywall. Brother Dominic did not have any special training or experience in the field of construction or drywall. After moving a number of sheets of drywall, Brother Dominic, Griffith, or both lost control of the drywall, and the entire stack fell on Griffith. Griffith sued Brother Dominic and the Abbey for injuries to his lower limbs that he alleges resulted from the drywall falling on him. Griffith alleged in his petition: "Defendant Brother Dominick [sic] was negligent in the following particulars: (a) in failing to use ordinary care in moving drywall; and; (b) in failing to warn Alvin Griffith that he was moving the drywall[.]" Griffith also claimed the Abbey was responsible for the conduct of Brother Dominic, under a theory of respondeat superior. As a result of a separate claim with the Division of Workers' Compensation against Friga, Griffith received workers' compensation benefits for the same injuries, including payment of his medical bills, temporary total disability payments, and a lump sum settlement. Defendants moved for summary judgment, arguing they were not proper parties to the lawsuit, because they relinquished control of the premises to the independent contractor, Friga; therefore, the duty to use ordinary care shifted to Friga and away from Defendants. Griffith responded to Defendants' motion, arguing the independent contractor defense was inapplicable because the lawsuit was based on a claim of general negligence from Brother Dominic's failure to use ordinary care and the Abbey's vicarious liability for Brother Dominic's actions via respondeat superior and was not based on a theory of premises liability. In granting summary judgment for Defendants, the trial court applied the law of premises liability and found that

Defendants were excluded from liability under the independent contractor exception because Griffith could not prove the Abbey was in control of the premises. This appeal followed.

## STANDARD OF REVIEW

Review of a grant of a summary judgment is de novo. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We do not defer to the trial court's ruling, as the propriety of summary judgment is purely an issue of law. *Natalini v. Little*, 185 S.W.3d 239, 241 (Mo.App. 2006). Instead, we apply the same criteria on appeal for testing the propriety of summary judgment that the trial court should have employed in initially deciding whether to grant the motion. *Donaldson v. Crawford*, 230 S.W.3d 340, 342 (Mo. banc 2007). We review the record submitted to the trial court in the light most favorable to the party against whom summary judgment was entered, and we accord that party the benefit of all inferences which may reasonably be drawn from the record. *Barekman v. City of Republic*, 232 S.W.3d 675, 677 (Mo.App.2007). Summary judgment will be upheld on appeal if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Foster v. St. Louis County*, 239 S.W.3d 599, 601 (Mo. banc 2007). The burden is on the moving party to establish the right to judgment as a matter of law. *Bridges v. White*, 223 S.W.3d 195, 198 (Mo.App.2007).

## DISCUSSION

■ The law of premises liability in Missouri provides that a property owner owes an invitee the duty to use reasonable and ordinary care to prevent injury to the invitee as the result of a dangerous condition existing on the premises. *Brown v.* *Morgan County*, 212 S.W.3d 200, 203–04 (Mo.App.2007); *Hunt v. Jefferson Arms Apt. Co.*, 679 S.W.2d 875, 879 (Mo.App. 1984). An employee of an independent contractor who has permission to use a landowner's premises is such an invitee. *Enloe v. Pittsburgh Plate Glass Co.*, 427 S.W.2d 519, 522 (Mo.1968). To establish a cause of action against the landowner under premises liability, the injured invitee must show: (1) a dangerous condition existed on the premises which involved an unreasonable risk; (2) the landowner knew, or by using ordinary care should have known of the condition; (3) the landowner failed to use ordinary care in removing or warning of the danger; and (4) as a result, the invitee was injured. *Brown*, 212 S.W.3d at 204.

■ "If, however, the landowner relinquishes possession and control of the premises to an independent contractor during a period of construction, the duty [to use reasonable and ordinary care to prevent injury as the result of a dangerous condition] shifts to the independent contractor. The landowner, no longer considered the possessor of the land, is thus relieved of potential liability." *Matteuzzi v. Columbus Partnership, L.P.*, 866 S.W.2d 128, 132 (Mo. banc 1993) (citing *Halmick v. SBC Corp. Servs., Inc.*, 832 S.W.2d 925, 927 (Mo.App.1992)). On the other hand, liability can be imposed upon the landowner if sufficient facts are shown that the landowner retained possession and control of the premises. *Matteuzzi*, 866 S.W.2d at 132; *Halmick*, 832 S.W.2d at 928. In order to impose such premises liability, the landowner's involvement in overseeing construction must be "substantial." *Matteuzzi*, 866 S.W.2d at 132; *Halmick*, 832 S.W.2d at 929. A "bare assertion" by an injured employee that the construction site was owned or controlled by the landowner is insufficient to state a cause of action

against the landowner under premises liability. *Matteuzzi*, 866 S.W.2d 128 at 132. The employee must show that the landowner controlled either the physical activities of the employees of the independent contractor or the details of the manner in which the work is done. *Matteuzzi*, 866 S.W.2d at 132; *Halmick*, 832 S.W.2d at 929.

The independent contractor exception to the law of premises liability was considered by this court in *Logan v. Sho–Me Power Elec. Coop.*, 122 S.W.3d 670 (Mo. App.2003). In that case, an employee of an independent contractor construction company was fatally electrocuted while installing fiber optic cable for an electric company. *Id.* at 672–73. The employee's parents sued the electric company, as the landowner, for the wrongful death of their son. *Id.* at 673. The parents also sued the electric company's project engineer, who was in charge of de-energizing the power lines near employee and his coworkers. *Id.* at 679. Parents alleged that the project engineer, when he energized the power line where employee was working, breached his duty of care to employee by failing to ensure that employee was not working on an energized power line. *Id.* The trial court granted summary judgment in favor of the electric company and its project engineer, on the basis that the parents' exclusive remedy was through workers' compensation under section 287.120.[1] *Id.* at 673.

The parents appealed, arguing that "as a *supplier of electricity*, [the electric company] had a non-delegable duty to provide 'the *highest degree of care* to prevent a foreseeable injury,' and ... even if the duty could be delegated, [the electric company] failed to do so because it retained substantial possession and control of the premises and the construction project."

*Id.* They further argued that the project engineer "breached an independent duty of care" that he owed to employee, based upon his actions in controlling the energizing and de-energizing of the power lines. *Id.* at 679. This court noted that the common law of premises liability had previously recognized an "exception" to the independent contractor exception when the activity performed by the independent contractor was inherently dangerous. *Id.* at 674. "[T]he landowner who commissioned the inherently dangerous work was said to have a nondelegable duty to take precautions to prevent injury from the activity." *Id.* In that situation, an employee of an independent contractor who was injured while working could obtain compensation from the landowner. *Id.* However, the inherently dangerous exception to premises liability was abolished by the Supreme Court of Missouri in 1991. *Id.* (citing *Zueck v. Oppenheimer Gateway Properties*, 809 S.W.2d 384, 390 (Mo. banc 1991)). Landowner liability-vicarious or direct-currently rests "not on the nature of the activity employed in, but on the degree of control a landowner maintains over the construction." *Logan*, 122 S.W.3d at 674 (quoting *Halmick*, 832 S.W.2d at 928). We affirmed the summary judgment in favor of the electric company, finding that under *Zueck*, a supplier of electricity could not be held liable for the electrocution of an employee of an independent contractor, and that the parents could not show the electric company retained substantial control over the construction site sufficient to shift the duty of care away from the independent contractor and impose liability on the electric company. *Logan*, 122 S.W.3d at 674–77. We found that the project engineer was implicitly excluded from liability as well, because the parents' "allegations

---

**1.** All references to statutes are to RSMo 2000.

and transcript citations focus almost exclusively on a standard of care related to conditions on the land (premises liability), specifically the presence of energized power lines." *Id.* at 680. We noted that parents made a new claim against the project engineer at oral argument, alleging he breached an "independent duty of care" not based on premises liability, but we could not consider that argument because it was undeveloped and unpreserved. *Id.* at 680–81.

The Eastern District recently considered this issue in *Daoukas v. City of St. Louis,* 228 S.W.3d 30 (Mo.App.2007). In that case, an employee of an independent contractor electric company was seriously injured while performing electrical work at an airport under a contract with the City of St. Louis ("City"). *Id.* at 31. The airport electrician, who was employed by the City, was in control of de-energizing the source of power while employee was working on the project. *Id.* at 32. Employee and his coworker watched the airport electrician as he "fiddled" with the safety mechanism on the transformer. *Id.* The safety mechanism prevented the cabinet doors to the transformer's two feeders from being open at the same time when equipment behind the doors was energized. *Id.* The airport electrician dismantled the safety mechanism so that he could open both doors simultaneously and visually confirm that the transformer was de-energized. *Id.* at 33. Employee and his coworker did not know what the airport electrician was doing, and did not ask him what he was doing. *Id.* at 32–33. The airport electrician left the dismantled safety mechanism on the floor, re-energized one of the feeders, and left the room. *Id.* at 33. Employee and his coworker began working on the other feeder, and an explosion occurred because it was still energized. *Id.* Both of them were seriously injured as a result. *Id.* The airport elec-

trician later admitted that he assumed the two men knew what he was doing and knew that the safety mechanism was dismantled. *Id.* He stated that if he had known the two men did not know he was dismantling it, he would not have done it. *Id.*

Employee sued the airport electrician and the City for his injuries. *Id.* In Count I, he alleged negligence by the City under a theory of premises liability; in Count II, he alleged negligence by the City, not from controlling the premises, but from the vicarious liability for the negligent acts of its employee, the airport electrician; and in Count III, he alleged "recklessness" by the airport electrician, in that the airport electrician knew or had reason to know that dismantling the safety mechanism created an unreasonable risk of bodily harm to employee. *Id.* The trial court granted summary judgment in favor of the City but discussed only premises liability and did not even mention the claim of vicarious liability. *Id.* The cause proceeded to trial against the airport electrician only, after which a jury found employee forty-nine percent at fault for his injuries and the airport electrician fifty-one percent at fault. *Id.* at 33–34.

On appeal, the airport electrician contended the trial court erred in denying his motion for judgment notwithstanding the verdict ("JNOV") because he was shielded by the independent contractor defense, and there was no evidence he controlled the jobsite. *Id.* at 34. The Eastern District found:

> [Airport electrician's] entire argument assumes this case was tried under a theory of premises liability and asserts a defense under the independent contractor exception.... [Employee] disagrees, asserting the case against [airport electrician] was tried under a theory of gen-

eral negligence, and as such, the independent contractor defense would not apply. . . . We agree it is axiomatic that if the City does not owe [employee] a duty of care under a premises liability theory of negligence, then [airport electrician], as the City's employee, likewise, does not owe such a duty. This absence of liability under one theory, however, does not preclude [airport electrician], and the City vicariously as [airport electrician's] employer, from owing [employee] a duty of care under a different theory of negligence. . . . We find [airport electrician] owed [employee] a duty of care despite the absence of a special relationship or the independent contractor exception. [Airport electrician's] arguments that he did not control the jobsite, the manner of work, or the testing of the cabinets, focus solely on a premises liability theory of negligence. That theory of negligence was not at issue here. [Employee] alleged alternative theories of general negligence against [airport electrician] and the City, which were the claims that were brought to trial. The sole claim of premises liability against the City was rejected by the trial court when it granted the City's motion for summary judgment.

*Id.* at 34–35. The court affirmed the trial court's denial of the JNOV motion, finding that, based upon the facts that employee was told not to touch anything related to

opening the cabinets, the airport electrician was solely responsible for de-energizing the power, and the airport electrician admitted he would not have dismantled the safety mechanism had he known employee was unaware of what he was doing, there was a "foreseeable likelihood that dismantling the [safety mechanism] would cause harm or injury[,]" and therefore, a duty of care arose between the airport electrician and employee "under traditional principles of negligence." *Id.* at 35.

In the instant case, the trial court chose to apply premises liability in evaluating and granting the summary judgment against Griffith, finding that the case is more similar to *Logan* than to *Daoukas*. The trial court stated:

> In this case there is a mixture of possible causes for Griffith's injuries. The dangerous condition of the leaning drywall,[2] the negligence of Dominic, and the negligence of [Griffith] himself. Since 1993 until *Daoukas,* the Missouri courts have applied premises liability doctrine to these cases even where plaintiffs claim acts of negligence by employees of the defendant landowner caused the injury.

The trial court chose to follow *Logan* because it "follows the reasoning established in [the] line of Missouri cases since *Matteuzzi, Zueck* and *Owen[s] v. Shop 'N Save,* 866 S.W.2d 132 [ (Mo.App.1993) ]."[3]

---

**2.** We note that Griffith did not allege in his petition that the "leaning drywall" was a dangerous condition on the premises, and none of the uncontroverted facts before the trial court on the motion for summary judgment support that factual determination.

**3.** The Supreme Court in *Owens,* which was decided on the same day as *Matteuzzi,* affirmed a summary judgment in favor of a food-store owner, who was sued by the employee of an independent contractor painting company, for injuries the employee sustained on the jobsite when he fell from the scaffold-

ing because the paint he was using dripped down from the ceiling and created a slick surface. 866 S.W.2d at 133–35. The court found that the employee's claim against the food-store owner was based on the inherently dangerous activity doctrine and was without merit as a result of *Zueck,* 809 S.W.2d 384. *Id.* The court also found that the food-store owner was excluded from liability under the independent contractor exception to premises liability, because employee could not show the food-store owner retained substantial control over the jobsite. *Id.*

We disagree and find *Daoukas* to be directly on point with the instant case.

■ Griffith's claims against Defendants relate to Brother Dominic's uninvited actions in putting the drywall in motion, not to a dangerous condition of the premises. Griffith makes no claim that there was a dangerous condition which Defendants failed to warn him of or remove. *See Brown*, 212 S.W.3d at 204. There are no facts that support that the drywall, in and of itself, leaning against the wall was a dangerous condition on the premises. *See Williams v. Barnes & Noble, Inc.*, 174 S.W.3d 556, 560 (Mo.App.2005) ("Generally, the dangerous condition [for purposes of a premises liability claim] is some sort of *artificial condition* on the property itself, not a negligent or dangerous act of one of the inhabitants of such property"). All that the uncontroverted facts show is that Brother Dominic's action put the drywall in motion, and the motion of the drywall injured Griffith. Unlike the plaintiffs in *Zueck, Halmick, Matteuzzi, Owens*, and *Logan*, Griffith is not claiming that Defendants failed to insure his safety in some way related to a condition of the premises. *Zueck*, 809 S.W.2d at 385 (plaintiff claimed landowner failed to provide safe work environment); *Halmick*, 832 S.W.2d at 927 (plaintiff claimed landowner was liable under inherently dangerous activity doctrine for failing to insure safety precautions were in effect); *Matteuzzi*, 866 S.W.2d at 131 (plaintiff claimed landowner failed to insure that premises were safe for third parties); *Owens*, 866 S.W.2d at 134 (plaintiff claimed landowner failed to provide adequate protection for persons performing inherently dangerous work); *Logan*, 122 S.W.3d at 680 (plaintiff claimed landowner's employee failed to insure that plaintiff did not work on an energized power line).[4]

Griffith's allegations as to Bother Dominic's conduct could apply to any third party who came onto the premises and acted in such a manner, not just to the premises' owner and its employees. This demonstrates that the allegations are directed to the actions of Brother Dominic and not to a condition of the premises. Accordingly, we find that premises liability law does not apply to Griffith's claims, because, unlike the plaintiff in Logan, Griffith's allegations do not focus on "conditions on the land" and instead focus on the uninvited actions of Brother Dominic in putting the drywall in motion.

■ The fact that Griffith does not claim Defendants owed a duty of care under premises liability does not prevent him from claiming Defendants owed a duty of care under a general theory of negligence. *Daoukas*, 228 S.W.3d at 34. *See also Hamilton v. Ross*, 304 S.W.2d 812, 814–15 (Mo.1957) ("Every person has the duty to exercise ordinary care to so conduct himself as not to injure others, and is liable to one who is harmed by a breach of that duty"). "It is a plaintiff's prerogative to choose the theory upon which he will submit his case, so long as that theory is supported by the pleadings and the evidence." *Elmore v. Owens–Illinois, Inc.*, 673 S.W.2d 434, 437 (Mo. banc 1984).

---

4. Two additional cases cited by Defendants are also distinguishable from the instant case because the plaintiff's allegations in each case were directed to the landowner's failure to insure the plaintiff's safety from a dangerous condition of the premises. In *Coonrod v. Archer–Daniels–Midland Co.*, 984 S.W.2d 529 (Mo.App.1998), plaintiff alleged the owner of a flour mill failed to warn him it was turning on the sifters, which shook his ladder and caused him to fall; and in *Horner v. Hammons*, 916 S.W.2d 810 (Mo.App.1995), plaintiff alleged his injuries were caused by the landowner's use of nonconforming anchor bolts in a steel structure which collapsed and injured him.

For the purpose of the Defendants' summary judgment motion and its consideration under a premises liability theory, the trial court assumed that Brother Dominic's actions were negligent and that he was the agent of the Abbey, even though such assumed facts were *not included in the uncontroverted facts before it.* However, when the motion for summary judgment is considered under a general negligence theory, as we have determined the trial court should have done, these assumptions demonstrate, in actuality, the existence of genuine issues of material facts which, as such, preclude the entry of summary judgment. *Hansen v. State,* 244 S.W.3d 207, 207 (Mo.App.2008). Points I and II are granted.

### DECISION

The trial court's summary judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

RAHMEYER, J., and BURRELL, J., concur.